NOT DESIGNATED FOR PUBLICATION

No. 121,293

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AUTUMN MCMULLIN,
*Appellant*,

v.

KYNYA KIRCH and QUINN KIRCH,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed July 31, 2020. Reversed and remanded with directions.

*Valerie L. Moore*, of Lenexa, for appellant, and Heather Landon, guardian ad litem.

*Suzanne Hale Robinson*, of Roth Davies, LLC, of Overland Park, for appellees.

Before HILL, P.J., BUSER and BRUNS, JJ.

PER CURIAM: The district court held that a person not biologically related to a child cannot legally establish a presumption of paternity under the Kansas Parentage Act. Kansas Supreme Court precedent teaches otherwise. The presumption does not depend on a biological connection. For that reason, we must reverse the court and remand for it to determine whether Autumn McMullin did establish a presumption of parentage because she notoriously or in writing recognized parentage of the child.

1

*Two women begin a romantic relationship.*

Because the court made a legal error, we recount only a summary of the facts in a time line.

McMullin and Kynya Kirch were in a romantic relationship and started living together. In early 2013, Kynya had an affair with Willyn Sellers and became pregnant. Autumn at first told Kynya to have an abortion, but at some point during the pregnancy Autumn got "onboard" and became more enthusiastic. Autumn's family organized baby showers where she and Kynya both participated. Autumn attended all of Kynya's obstetrical appointments.

Kynya gave birth in November 2013. Autumn was present at the birth and cut the umbilical cord. Autumn referred to the child on Facebook as "My girlfriend's and I['s]" child. Kynya admitted Autumn referred to the child as her daughter. The child was named A. McMullin on the original birth certificate. No father was listed on the birth certificate.

Autumn and Kynya did not enter into a written coparenting agreement. At one point, they were engaged to be married. But they ended their relationship in early 2015.

After the breakup, Autumn continued to spend significant time with A.M., mostly in accordance with their work schedules. But Autumn also had the child for two weeks at a time when Kynya temporarily moved to Kentucky. Kynya met Autumn in St. Louis for the exchanges. Autumn's time with the child was more than babysitting. Autumn gave Kynya money for day care expenses. Autumn testified the child calls her "Momma or Mommy," but Kynya testified that did not begin until this litigation had started, and at Autumn's instruction. The child calls Autumn's parents "Poppa" and "Grandma Shannon."

2

In 2016, Kynya married Quinn Kirch. Quinn could not be biologically related to the child. The child calls Quinn "Dad" or "Daddy."

In January 2018, Kynya stopped Autumn's visitation with the child. The next month, she and Kirch obtained a Missouri birth certificate that changed the child's last name to Kirch.

In March 2018, Autumn petitioned the court for determination of parentage, claiming that she "notoriously or in writing recognizes paternity of the child." See K.S.A. 2019 Supp. 23-2208(a)(4). The district court issued temporary orders giving Autumn visitation time with the child every other weekend, finding that Autumn had shown "an existing de facto custody arrangement."

Willyn Sellers was made a party to the action. Willyn attended only one court hearing in October 2018. He later acknowledged he was the child's father but relinquished his parental rights and consented to a stepparent adoption. The court appointed a guardian ad litem for the child.

At the bench trial in December 2018, the guardian ad litem gave her opinion based on her independent investigation. This included not only talking with the child but hearing the evidence at trial. She offered that Autumn and Kynya had intended to coparent the child even before the child's birth. She stated that the time Autumn spent with the child after their separation was parenting time and that it was in the best interests of the child that Autumn be considered a parent.

Four months later, the court held that Autumn could not legally establish a presumption of parentage because she was not biologically related to the child and did not enter into a coparenting agreement with Kynya. The court specifically held that a "nonbiological exception" found in *Frazier v. Goudschaal*, 296 Kan. 730, 735, 746-47,

3

295 P.3d 542 (2013), did not apply because Autumn and Kynya did not enter into a coparenting agreement. The district court did not determine whether Autumn could meet the "notoriously or in writing" language of K.S.A. 2019 Supp. 23-2208(a)(4).

The court also found that both Willyn and Quinn had established a presumption of paternity, weighed the presumptions, and determined that Quinn's presumption was founded on weightier considerations of policy and logic and it was in the best interests of the child for Quinn to be declared the legal parent.

*The court misapplied* Frazier.

In *Frazier*, our Supreme Court held a woman could be a presumptive mother under the prior provisions of the Kansas Parentage Act without claiming to be a biological or adoptive mother. 296 Kan. 730, Syl. ¶ 6. Contrary to the district court's interpretation, the *Frazier* court did not create an "exception" to the statute enacted by our Legislature, but was trying to harmoniously interpret all of its provisions.

> "Obviously, except for subsection (5), the parental relationship for a father can be legally established under the KPA without the father actually being a biological or adoptive parent. That is important because K.S.A. 38-1113 states that a mother 'may be established . . . under this act [KPA]' and K.S.A. 38-1126, dealing with the determination of the mother and child relationship, specifically incorporates the provisions of the KPA applicable to the father and child relationship, insofar as practicable. A harmonious reading of all of the KPA provisions indicates that a female can make a colorable claim to being a presumptive mother of a child without claiming to be the biological or adoptive mother, and, therefore, can be an 'interested party' who is authorized to bring an action to establish the existence of a mother and child relationship." 296 Kan. at 746-47.

A review of the Kansas Parentage Act is helpful at this point. Under the Act, "'parent and child relationship' means the legal relationship existing between a child and

4

the child's biological or adoptive parents." K.S.A. 2019 Supp. 23-2205. A mother and child relationship "may be established by proof of her having given birth to the child *or under this act*." (Emphasis added.) K.S.A. 2019 Supp. 23-2207. To determine a mother and child relationship "under this act," the statute lists several presumptions of "paternity" that "[i]insofar as practicable" apply to determine a mother and child relationship as well. K.S.A. 2019 Supp. 23-2208(a); K.S.A. 2019 Supp. 23-2220. The presumptions are:

"A man is presumed to be the father of a child if:

"(1)    The man and the child's mother are, or have been, married to each other and the child is born during the marriage or within 300 days after the marriage is terminated . . . .

"(2)    Before the child's birth, the man and the child's mother have attempted to marry each other . . . .

. . . .

"(3)    After the child's birth, the man and the child's mother have married, or attempted to marry . . . .

. . . .

"(4)    The man notoriously or in writing recognizes paternity of the child, including but not limited to a voluntary acknowledgment made in accordance with K.S.A. 2019 Supp. 23-2223 or K.S.A. 65-2409a, and amendments thereto.

"(5)    Genetic test results indicate a probability of 97% or greater that the man is the father of the child.

"(6)    The man has a duty to support the child under an order of support regardless of whether the man has ever been married to the child's mother." K.S.A. 2019 Supp. 23-2208(a).

The presumptions are rebuttable by clear and convincing evidence. K.S.A. 2019 Supp. 23-2208(b). The statute recognizes that two or more presumptions may arise that conflict with each other, at which point "the presumption which on the facts is founded on the weightier considerations of policy and logic, including the best interests of the child, shall control." K.S.A. 2019 Supp. 23-2208(c). Autumn claims a presumption of

5

maternity under K.S.A. 2019 Supp. 23-2208(a)(4), that she "notoriously or in writing recognizes paternity of the child."

The Supreme Court made a holding much like *Frazier* in *State ex rel. Secretary of DFC v. Smith*, 306 Kan. 40, 55-56, 392 P.3d 68 (2017). We acknowledge that the *Frazier* holding was vigorously criticized by one of the justices in another decision, but *Frazier* remains the law. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 932, 416 P.3d 999 (2018) (Stegall, J., dissenting) ("the *Frazier* court impermissibly broadened the meaning of K.S.A. 2016 Supp. 23-2208 to include presumptions entirely severed from biology").

We note that other panels of this court have since applied the *Frazier* holding, allowing both women and men to establish a presumption of parentage under K.S.A. 2019 Supp. 23-2208(a)(4) without claiming biological maternity or paternity. See, e.g., *Kline v. Holmes*, No. 118,067, 2018 WL 1659927, at *5 (Kan. App. 2018) (unpublished opinion); *In re Paternity of E.G.S.*, No. 108,778, 2013 WL 2972697, at *3-4 (Kan. App. 2013) (unpublished opinion).

As it relates to the presumptions, none of the statutory language and the wording in *Frazier* limits the holding to cases in which there is a coparenting agreement as the court ruled here. That is an error of law. Of course, as we recognized above, the presumptions are not determinative of parentage. If a presumption is established, it may still be rebutted by clear and convincing evidence.

We reverse and remand for a factual determination of whether Autumn is entitled to a presumption of maternity under K.S.A. 2019 Supp. 23-2208(a)(4), because she notoriously or in writing recognized her maternity of the child.

Reversed and remanded with directions.

6